UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

FERNANDO R. HERNANDEZ,

                                    Plaintiff,                         21-CV-4918 (VF)

            -against-                                        **OPINION & ORDER**

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

                                    Defendant.

----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge**

        Plaintiff Fernando Hernandez seeks judicial review of a final determination by Defendant,

the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"),[1]

denying Plaintiff's application for Supplemental Security Income benefits ("SSI") under Title XVI

of the Social Security Act (the "Act").[2] Before the Court is Plaintiff's motion for judgment on the

pleadings and the Commissioner's cross-motion for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is

**GRANTED** and the Commissioner's cross-motion is **DENIED**.

---

        [1] On July 9, 2021, Kilolo Kijakazi became Acting Commissioner of the SSA, and is therefore substituted as named defendant. See Fed. R. Civ. P. 25(d) (permitting automatic substitution of a party who is a public official sued in his official capacity when the public official "ceases to hold office" while a suit is pending).

        [2] Plaintiff also applied for Disability Insurance Benefits ("DIB") under Title II of the Act. Plaintiff alleged a disability onset date of June 10, 2014. The application was denied. See SSA Administrative Record ("R.") at 11, 23, ECF No. 15. Plaintiff, however, does not challenge the denial of his claim for DIB benefits here. See Plaintiff's Brief ("Pl.'s Br.") at 1, ECF No. 21.

1

## BACKGROUND

### A. Procedural History

On February 14, 2019, Plaintiff filed an application for SSI, alleging the

onset date of his disability on June 10, 2014. R. at 200-09. In his disability report (Form SSA-

3368), Plaintiff alleged disability based on a herniated disc, pinched nerves, sciatica, and asthma.

R. at 236. Plaintiff's claim for SSI benefits was denied on April 11, 2019, and on July 9, 2019,

Plaintiff requested a hearing before an administrative law judge. R. at 115, 122, 144.

On December 3, 2019, Plaintiff and his counsel, Jack Farhi, appeared before Administrative

Law Judge John Carlton (hereinafter, the "ALJ"). R. at 542-84. On March 31, 2020, the ALJ issued

his written decision, denying Plaintiff's claim and finding that Plaintiff has not been under a

disability within the meaning of the Act from June 10, 2014, through the date of the decision. R. at

10-23. Plaintiff requested a review by the SSA Appeals Council on May 28, 2020, which was

denied on April 8, 2021. R. at 1-5, 193-95. That denial made the March 31, 2020 decision of the

ALJ the final action of the Commissioner. See Lesterhuis v. Colvin, 805 F. 3d 83, 87 (2d Cir.

2015) (per curiam) ("If the Appeals Council denies review of a case, the ALJ's decision, and not

the Appeals Council's, is the final agency decision.") (citation omitted).

On June 3, 2021, after exhausting his administrative remedies, Plaintiff, represented by

counsel, commenced the instant action seeking judicial review of the ALJ's decision, requesting

that this Court modify the decision and grant Plaintiff maximum monthly insurance and/or SSI

benefits as allowable under the Act. See Complaint, ECF No. 1. In the alternative, Plaintiff

requested that the case be remanded to the Commissioner. Id. On November 22, 2021, the

Commissioner filed the Administrative Record, which constituted her answer. ECF No. 15.

Thereafter, on April 21, 2022, Plaintiff moved for judgment on the pleadings and submitted a

memorandum of law in support of his motion, requesting that the Court reverse the ALJ's decision

or remand for further proceedings. ECF Nos. 20-21. On June 21, 2022, the Commissioner submitted her cross-motion for judgment on the pleadings. ECF Nos. 23-24. Plaintiff filed a reply on July 6, 2022. ECF No. 25.

**B. Medical Evidence**

The parties' memoranda in support of their motions for judgment on the pleadings provide summaries of the medical evidence contained in the administrative record. See Pl.'s Br. at 1-6 (ECF No. 21); Def's Br. at 2-4 (ECF No. 24). Having examined the record, the Court concludes that the parties have accurately stated its contents. Although the parties focus on different aspects of the record at times, there are no inconsistencies in the parties' recounting of the medical evidence. Moreover, no party has objected to the other's summary of the medical evidence. The Court thus adopts the parties' summaries as complete for the purposes of the issues raised in this action. See Collado v. Kijakazi, No. 20-CV-11112 (JLC), 2022 WL 1960612, at *2 (S.D.N.Y. June 6, 2022) (adopting parties' summaries of medical evidence where parties did not dispute recitation of relevant facts); Scully v. Berryhill, 282 F. Supp. 3d 628, 631 (S.D.N.Y. 2017) (adopting parties' medical evidence summaries where they were "substantially consistent with each other" and neither party objected to the opposing party's summary). The medical evidence in the record is discussed below to the extent necessary to address the issues raised in the pending cross-motions.

## DISCUSSION

**A. Legal Standards**

1. Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Thus, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal

quotation marks and citation omitted).

      2.  Judicial Review of the Commissioner's Decision

An individual may obtain judicial review of a final decision of the Commissioner "in the

district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C.

§ 405(g). A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d

370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive").

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389,

407 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802

F.3d at 374-75; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means—and means

only—such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and internal quotation

marks omitted). "Under the substantial-evidence standard, a court looks to an existing

administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's

factual determinations . . . whatever the meaning of 'substantial' in other contexts, the threshold for

such evidentiary sufficiency is not high." Id. (citation omitted). In weighing whether substantial

evidence exists to support the Commissioner's decision, "the reviewing court is required to

examine the entire record, including contradictory evidence and evidence from which conflicting

inferences can be drawn." <u>Selian</u>, 708 F.3d at 417 (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033,

1038 (2d Cir. 1983) (per curium)).

The substantial evidence standard is a "very deferential standard of review." <u>Brault v. Soc.</u>

<u>Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012). The Court "must be careful not to

substitute its own judgment for that of the Commissioner, even if it might justifiably have reached

a different result upon a <i>de novo</i> review." <u>DeJesus v. Astrue</u>, 762 F. Supp. 2d 673, 683 (S.D.N.Y.

2011) (quoting <u>Jones v. Sullivan</u>, 949 F.2d 57, 59 (2d Cir. 1991)) (internal quotation marks and

alterations omitted). "[O]nce an ALJ finds facts, [a court] can reject those facts 'only if a

reasonable factfinder would have to conclude otherwise.'" <u>Brault</u>, 683 F.3d at 448 (quoting <u>Warren</u>

<u>v. Shalala</u>, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted). "Even where the administrative

record may also adequately support contrary findings on particular issues, the ALJ's factual

findings must be given conclusive effect so long as they are supported by substantial evidence."

<u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks

omitted); <u>see also</u> <u>Johnson v. Astrue</u>, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

3.   <u>Commissioner's Determination of Disability</u>

The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see id.</u> § 1382c(a)(3)(A).

Physical or mental impairments must be "of such severity that [the claimant] is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A); <u>see id.</u> § 1382c(a)(3)(B). In assessing a claimant's impairments and determining

whether they meet the statutory definition of disability, the Commissioner "must make a thorough

inquiry into the claimant's condition and must be mindful that 'the Social Security Act is a remedial statute, to be broadly construed and liberally applied.'" Mongeur, 722 F.2d at 1037 (quoting Gold v. Sec'y of H.E.W., 463 F.2d 38, 41 (2d Cir. 1972)). The Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Id. (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

### Five-Step Inquiry

"The Social Security Administration has outlined a 'five-step, sequential evaluation process' to determine whether a claimant is disabled[.]" Estrella v. Berryhill, 925 F.3d 90, 94 (2d Cir. 2019) (citations omitted); 20 C.F.R. § 416.920(a)(4). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). Second, if the claimant is unemployed, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 416.920(c). Third, if the claimant has such an impairment, the Commissioner considers whether the medical severity of the impairment "meets or equals" a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. § 416.920(a)(4)(iii), 416.920(d). If so, the claimant is considered disabled. Id.

If the claimant alleges a mental impairment, the Commissioner must apply a "special technique" to determine the severity of the claimant's impairment at step two, and to determine whether the impairment satisfies Social Security regulations at step three. See 20 C.F.R § 416.920a; see also Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008). "If the claimant is found to

6

have a 'medically determinable mental impairment,' the [Commissioner] must 'specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s),' then 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c) of [Section 416.920a],' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Velasquez v. Kijakazi, No. 19-CV-9303 (DF), 2021 WL 4392986, at *18 (S.D.N.Y. Sept. 24, 2021) (quoting 20 C.F.R. §§ 416.920a(b), (c)(3)). "The functional limitations for these first three areas are rated on a five-point scale of none, mild, moderate, marked, or extreme, and the limitation in the fourth area (episodes of decompensation) is rated on a four-point scaled of none, one or two, three, or four or more." Id. (internal quotations, alterations, and citations omitted).

Fourth, if the claimant's impairment does not meet or equal a listed impairment, the Commissioner continues to the fourth step and determines whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. § 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. § 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. § 416.920(a)(4)(v).

The claimant has the burden at the first four steps. Burgess, 537 F.3d at 128. If the claimant is successful, the burden shifts to the Commissioner at the fifth and final step, where the Commissioner must establish that the claimant has the ability to perform some work in the national economy. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Evaluation of Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." Pena ex rel. E.R. v. Astrue, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. § 416.927(d)) (internal quotation marks omitted). For SSI applications filed before March 27, 2017, the SSA's regulations required application of the "treating physician rule," which required an ALJ to give more weight to the opinions of physicians with the most significant relationship with the claimant. See 20 C.F.R. § 416.927(d)(2); see also Taylor v. Barnhart, 117 F. App'x 139, 140 (2d Cir. 2004). Under the treating physician rule, an ALJ was required to provide her reasoning if she determined that a treating physician's opinion was not entitled to "controlling weight," or at least "more weight," than the opinions of non-treating and non-examining sources. Gonzalez v. Apfel, 113 F. Supp. 2d 580, 588-89 (S.D.N.Y. 2000). In addition, under the treating physician rule, a consultative physician's opinion was generally entitled to "little weight." Giddings v. Astrue, 333 F. App'x 649, 652 (2d Cir. 2009).

On January 18, 2017, the SSA published comprehensive revisions to the regulations regarding the evaluation of medical evidence for applications filed on or after March 27, 2017 (such as Plaintiff's application in this case). See Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869-70, 2017 WL 168819 (Jan. 18, 2017). "In implementing new regulations, the SSA has apparently sought to move away from a perceived hierarchy of medical sources." Velasquez, 2021 WL 4392986, at *19 (citing 82 Fed. Reg. 5844). The new regulations state that an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from [a claimant's] medical sources."[3] 20 C.F.R. §416.920c(a); see also Young v. Kijakazi, No. 20-CV-03606 (SDA), 2021 WL 4148733, at *9 (S.D.N.Y. Sept. 13, 2021). Instead, an ALJ must consider all medical opinions in the record and "evaluate the persuasiveness" based on five "factors": (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any "other" factor that "tend[s] to support or contradict a medical opinion." 20 C.F.R. § 416.920c(a)-(c).

Notwithstanding the requirement to "consider" all of these factors, the ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. § 416.1520c(a)-(b). Under the new regulations, the ALJ must "explain," in all cases, "how [she] considered" both the supportability and consistency factors, as they are "the most important factors." Id. § 416.920c(b)(2); see also Young, 2021 WL 4148733, at *9 (describing supportability and consistency as "the most important" of the five factors); Amber H. v. Saul, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (noting that the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," the "same factors" that formed the foundation of the treating physician rule). With respect to the supportability factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." Vellone v. Saul, No. 20-CV-261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. § 416.920c(c)(1)); see

---

[3] The new regulations define "prior administrative medical finding" as: a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, including but not limited to: (i) The existence and severity of your impairment(s); (ii) The existence and severity of your symptoms; (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) If you are an adult, your [RFC]; (v) Whether your impairment(s) meets the duration requirement; and (vi) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim." 20 C.F.R. § 416.913(a)(5).

9

Rivera, 2020 WL 8167136, at *16 (noting that supportability "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support [his or] her opinion") (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." Vellone, 2021 WL 319354, at *6 (citing 20 C.F.R. § 416.920c(c)(2)).

As to the three remaining factors—relationship with the claimant, specialization, and "other"—the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source. 20 C.F.R. § 416.920c(b)(2). If the ALJ finds two or more medical opinions to be equally supported and consistent with the record, but not identical, the ALJ must articulate how she considered the three remaining factors. See id. § 416.920c(b)(3); see also Velasquez, 2021 WL 4392986, at *20. Thus, "[a]lthough the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medication opinion, the ALJ must still 'articulate how [she] considered the medical opinions' and 'how persuasive [she] find[s] all of the medical opinions.'" Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (citations omitted). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases [his] explanation upon a misreading of the record, remand is required." Rivera, 2020 WL 8167136, at *14 (quoting Andrew G., 2020 WL 5848776, at *9).

Courts considering the application of the new regulations have concluded that "the factors are very similar to the analysis under the old [treating physician] rule." Velasquez, 2021 WL 4392986, at *20 (quoting Dany Z. v. Saul, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)); see also Acosta Cuevas v. Comm'r of Soc. Sec., No. 20-CV-502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (collecting cases considering the new regulations and concluding that "the

essence" of the treating physician rule "remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar"), report and recommendation adopted by, 2022 WL 717612 (Mar. 10, 2022). "This is not surprising considering that, under the old rule, an ALJ had to determine whether a treating physician's opinion was supported by well-accepted medical evidence and not inconsistent with the rest of the record before controlling weight could be assigned." Acosta Cuevas, 2021 WL 363682, at *9; see also e.g., Andrew G., 2020 WL 5848776, at *5 (noting that "consistency and supportability" were the foundation of the treating physician rule).

### Claimant's Credibility

An ALJ's credibility finding as to the claimant's disability is entitled to deference by a reviewing court. Osorio v. Barnhart, No. 04-CV-7515 (DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May 30, 2006). "[A]s with any finding of fact, '[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.'" Id. (quoting Aponte v. Sec'y of Health and Hum. Servs., 728 F.2d 588, 591 (2d Cir. 1984)) (first alteration in original). Still, an ALJ's finding of credibility "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (quoting Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988)). "The ALJ must make this [credibility] determination 'in light of the objective medical evidence and other evidence regarding the true extent of the alleged symptoms.'" Id. (quoting Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984)).

SSA regulations provide that statements of subjective pain and other symptoms alone cannot establish a disability. Genier, 606 F.3d at 49 (2d Cir. 2010). The ALJ must follow a two-step framework for evaluating allegations of pain and other limitations. Id. First, the ALJ considers whether the claimant suffers from a "medically determinable impairment that could reasonably be

expected to produce" the symptoms alleged. Id.; see also 20 C.F.R. § 416.929(b). "If the claimant

does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to

which [the claimant's] symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence' of record." Id. (quotation omitted); see also 20 C.F.R.

§ 416.929(a). Among the kinds of evidence that the ALJ must consider (in addition to objective

medical evidence) are:

> 1. The individual's daily activities; 2. [t]he location, duration, frequency, and
> intensity of the individual's pain or other symptoms; 3. [f]actors that precipitate and
> aggravate the symptoms; 4. [t]he type, dosage, effectiveness, and side effects of any
> medication the individual takes or has taken to alleviate pain or other symptoms; 5.
> [t]reatment, other than medication, the individual receives or has received for relief
> of pain or other symptoms; 6. [a]ny measures other than treatment the individual
> uses or has used to relieve pain or other symptoms (e.g., lying flat on his back,
> standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. [a]ny other
> factors concerning the individual's functional limitations and restrictions due to pain
> or other symptoms.

Pena, 2008 WL 5111317, at *11 (citing Social Security Ruling ("SSR") 96-7p, 1996 WL 374186,

at *3 (SSA July 2, 1996)).

**B. The ALJ's Decision**

On March 31, 2020, the ALJ issued his decision, R. at 10-23, finding that Plaintiff was not

disabled under the Act. Id. at 23. The ALJ began by explaining the five-step evaluation process for

determining whether an individual is disabled. Id. at 11-12.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity from June

2014 to December 2017, but that there had been a "continuous 12-month period" during which

Plaintiff had not "engage[d] in substantial gainful activity." Id. at 13. At step two, the ALJ found

that Plaintiff had three severe medically determinable impairments that "significantly limit the

ability to perform basic work activities": (1) degenerative disc disease and bulging discs in the

lumbar spine; (2) obstructive sleep apnea; and (3) obesity. Id. at 13-14. The ALJ also noted
Plaintiff's non-severe impairments—asthma and depression. Id. at 14.

In assessing Plaintiff's depression, the ALJ applied evidence in the record to each of the
"four broad functional areas" (known as "paragraph B" criteria), including: (1) understanding,
remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or
maintaining pace; and (4) adapting or managing oneself. Id. at 14-15. The ALJ concluded that
depression caused no more than a "mild" limitation in any of the functional areas and was
"nonsevere" because the evidence did not indicate "more than a minimal limitation" to Plaintiff's
ability to do "basic work activities." Id. at 14-15.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR
Part 404, subpart P, appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Id. at 15. The ALJ
discussed Plaintiff's severe impairments and explained why they did not meet the corresponding
listing. Id. Prior to proceeding to step four, the ALJ found, "[a]fter careful consideration of the
entire record," that Plaintiff maintained the RFC "to perform light work as defined in 20 CFR
416.967(b) except that he can stand and/or walk for a total of four hours out of an eight hour day."
Id. at 16. The ALJ further explained that in making the RFC finding, he "considered all symptoms
and the extent to which these symptoms can reasonably be accepted as consistent with the objective
medical evidence and other evidence," and "also considered the medical opinion(s) and prior
administrative medical finding(s)" as required by 20 C.F.R. 416.920(c). Id.

In considering Plaintiff's symptoms, the ALJ followed the established two-step process: (1)
determining whether there was an underlying medically determinable physical or mental
impairment; and (2) if such an impairment was shown, evaluating the "intensity, persistence, and
limiting effects of the claimant's symptoms to determine the extent to which they limit the

claimant's work-related activities." Id. at 16. The ALJ analyzed Plaintiff's impairments and, after considering the evidence, found that despite the fact that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id. at 17. The ALJ concluded that Plaintiff maintained the ability to perform "a reduced range of light work with a sit-stand option and moderate postural and environmental restrictions." Id. at 21. The ALJ also independently evaluated each of the medical opinions and prior administrative medical findings and determined whether each opinion was "persuasive," "partially persuasive," or "not persuasive."

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work, which included work as a gate guard and bus driver. Id. at 21. At step five, the ALJ considered Plaintiff's "age, education, work experience, and [RFC]," and found that "there [were] jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id. Based on the testimony of the vocational expert ("VE") at Plaintiff's hearing and the Medical-Vocational Guidelines, the ALJ concluded that a finding of "not disabled" was appropriate because Plaintiff could perform a limited range of light work and was "capable of making a successful adjustment" to work that exists in significant numbers in the national economy. Id. at 22. The ALJ cited the VE's testimony that given Plaintiff's age, education, work experience, and RFC, such an individual would be able to perform work as: (1) an office helper (DOT No. 239.567-010); (2) an information clerk (DOT 237.367-018); and (3) a mail sorter (DOT 209.687-026).[4] Id. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability" under the Act, "from June 10, 2014," the alleged onset date, "through the date of the decision." Id. (citing 20 CFR 416.920(g)).

---

[4] The ALJ also noted that he found the VE's testimony to be "consistent with the information contained in the Dictionary of Occupational Titles." R. at 22.

**C. <u>Analysis</u>**

Plaintiff attacks the ALJ's determination on four grounds. First, Plaintiff argues that the ALJ failed to properly consider if Plaintiff was *per se* disabled under the requirements of Medical Listing 1.04(A) based on his back impairments. Pl.'s Br. at 8-9. Second, Plaintiff claims that the ALJ failed to properly evaluate the medical opinion evidence concerning Plaintiff's physical impairments. <u>Id.</u> at 10-15. Third, Plaintiff argues that the ALJ erred by finding his mental impairments to be non-severe. <u>Id.</u> at 15-18. And fourth, Plaintiff argues that the ALJ failed to properly evaluate his testimony. <u>Id.</u> at 18-22.

Plaintiff is correct that the ALJ failed to properly evaluate the medical opinion evidence. In finding that Plaintiff retained the ability to perform a reduced range of light work, the ALJ erred in relying on the opinion of a non-examining consultant, Dr. Putcha, who based his opinion on a stale record. Moreover, the ALJ's determination that Plaintiff could perform light work, which included the ability to lift or carry 20 pounds, is not supported by substantial evidence. There is no valid medical opinion in the record that supports a finding that Plaintiff can lift or carry 20 pounds. Plaintiff is thus entitled to a remand for a new hearing, because the ALJ improperly weighed the medical opinion evidence and the ALJ's determination is not supported by substantial evidence.[5]

1. <u>The ALJ improperly weighed the medical opinion evidence in the record.</u>

In reaching his determination, the ALJ must consider all medical opinions in the record and evaluate their persuasiveness, considering the factors outlined in the regulations and specifically explaining, in all cases, how he assessed the "supportability" and "consistency" factors. 20 C.F.R. § 416.920c(b)(2); <u>Young</u>, 2021 WL 4148733, at *9. Here, in assessing and determining the weight

---

[5] Because these two grounds provide a basis for a remand, the Court does not address Plaintiff's other grounds for relief.

to afford each opinion, the ALJ failed to adequately explain his evaluation of the medical opinion of Dr. Putcha, upon which the ALJ relied in reaching his determination. More specifically, the ALJ failed to adequately explain how Dr. Putcha's opinion was supported and consistent with the evidence in the record.

The record contains three medical opinions: (1) an opinion from Plaintiff's treating physician, Dr. Kosharskyy; (2) an opinion from a non-examining, state-agency medical consultant, Dr. Putcha; and (3) an opinion from an examining consultant, Dr. Finegan. The ALJ found the opinion of Dr. Putcha to be "generally persuasive," and the opinions of Dr. Kosharskyy and Dr. Finegan to not be persuasive.[6] R. at 20. As it pertains to Plaintiff's back impairment, the ALJ found "recent evidence suggesting some worsening in [Plaintiff's] back pain with prolonged physical activity in one position," which required additional limitations for standing and walking than Dr. Putcha had assessed. Id.

Dr. Putcha, a non-examining state consultant, rendered a medical opinion on May 28, 2019. R. at 103-12. Dr. Putcha found that Plaintiff had the severe impairments of obesity, asthma, and essential hypertension, and the non-severe impairment of substance-addiction disorder (drugs).[7] R. at 107. Dr. Putcha found Plaintiff's only symptom to be pain. Id. Dr. Putcha did not find that Plaintiff had any back impairments or injuries. Id. Dr. Putcha opined that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's pain or other symptoms, but that Plaintiff's allegations were inconsistent with the opinion evidence, and only partially consistent with the record as a whole. Id. As such, Dr. Putcha opined that Plaintiff's

---

[6] Plaintiff does not dispute the ALJ's rejection of Dr. Finegan's opinion. Pl.'s Br. at 12 n.18.

[7] Although Dr. Putcha listed Plaintiff as having the non-severe impairment of a substance-addiction disorder to drugs, he also later indicated in his report that there was no medical evidence in the record of any substance-abuse disorder. R. at 112.

16

statements concerning the intensity, persistence, and limiting effects of his symptoms were "generally not consistent" with the evidence in the record. Id. at 108. The only medical opinion that Dr. Putcha referenced to support his opinion was Dr. Finegan's opinion—an opinion the ALJ found was not persuasive. Id. at 108, 110.

Dr. Putcha opined that Plaintiff could perform light work. Id. at 111. Specifically, Dr. Putcha found that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and stand or sit for six hours out of an eight-hour workday. Id. at 108. Dr. Putcha further opined that Plaintiff could frequently climb ramps or stairs, and balance; occasionally climb ladders, ropes, and scaffolds; and occasionally stoop, kneel, crouch, and crawl. Id. at 109.

In determining that Dr. Putcha's opinion was "generally persuasive," the ALJ noted that Dr. Putcha's findings were "well-supported by a review of the available evidence at the time of his finding including the consultative examination report" and was also "consistent with the evidence" describing Plaintiff as having "intact strength and mobility for most of the period at issue." Id. at 20. The ALJ, however, found that Plaintiff warranted additional limitations to his ability to stand and walk "in light of the recent evidence suggesting some worsening in [Plaintiff's] back pain with prolonged physical activity in one position." Id.

The ALJ's cursory analysis of Dr. Putcha's opinion fails to adequately articulate how the ALJ considered evidence relevant to the supportability and consistency factors of the medical opinion, as required under the applicable regulations. Beginning with supportability, to analyze that factor, the ALJ must assess the objective medical evidence and supporting explanations presented with the medical opinions. See Rivera, 2020 WL 8167136, at *16 ("'[S]upportability,' under the new regulations, has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her opinion."). "The more relevant the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. 404.1520c(c)(1); Rosario v. Comm'r of Soc. Sec., No. 20-CV-7749 (SLC), 2022 WL 819810, at *8 ("[T]he strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase.") (citation omitted).

In addressing the supportability factor, the ALJ provided a single statement that Dr. Putcha's opinion was "well-supported by a review of the available evidence at the time of his finding including the consultative examination report." R. at 20. That lone conclusory statement, however, does not explain how Dr. Putcha's opinion was supported by the underlying medical evidence in the record. See Prieto v. Comm'r of Soc. Sec., No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) (explaining that ALJ "failed to satisfy his obligations under the applicable regulations" where he merely stated that a doctor's opinion was "supported by the medical evidence of record and by her underlying examination."); see also Ayala v. Kijakazi, No. 20-CV-09373 (RWL), 2022 WL 3211463, at *17 (S.D.N.Y. Aug. 9, 2022) (noting that ALJ's conclusory assessment of the supportability factor, which stated that a doctor's opinion was "supported by record review," was insufficient to withstand review). As other courts have explained, "[e]schewing rote analysis and conclusory explanations, the ALJ must discuss the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." Vellone, 2021 WL 319354 at *4 (citation omitted). Here, the conclusory statement from the ALJ that Dr. Putcha's opinion was well supported does not include any specificity and thus does not provide a meaningful basis from which the Court can assess how the supportability factor was assessed by the ALJ.

Moreover, the ALJ's lack of meaningful analysis is especially troubling here because Dr. Putcha's opinion was stale. Dr. Putcha based his opinion on the opinion of Dr. Finegan, a

consultative examiner. R. at 108, 110. Dr. Putcha did not review the opinion of Plaintiff's treating physician, Dr. Kosharskyy.[8] And, the opinion of Dr. Finegan was an opinion that the ALJ found to be unpersuasive. Id. at 20. Despite this seeming contradiction, the ALJ did not provide any explanation for why Dr. Putcha's opinion was "generally persuasive" while Dr. Finegan's opinion—the only opinion relied on by Dr. Putcha—was "not persuasive." Id.

Additionally, "recent evidence" in the record, as the ALJ noted, showed that Plaintiff had "some worsening" of his "back pain with prolonged physical activity in one position." Id. That recent evidence was admitted after Dr. Putcha rendered his opinion. Although the ALJ does not specify the "recent evidence" he relies on, see id., Dr. Kosharkyy's medical opinion indicated that Plaintiff could only sit continuously for a maximum period of one hour and would need to alternate between sitting and standing postures. Id. at 331. Dr. Kosharkyy's opinion also stated that Plaintiff could never lift or carry over ten pounds. Id. at 333. Similarly, medical records from August 2019 and November 2019—also after Dr. Putcha rendered his opinion—indicated that Plaintiff had diffuse tenderness in his lower back, limited range of motion of his lumbar spine and pelvis, moderate muscle spasm, moderate impairment in his mobility, and that his pain was exacerbated by "mechanical type activities." Id. at 469-470, 473-74. "Courts will find an opinion stale if it is given prior to a deterioration" in the plaintiff's condition. Skartados v. Comm'r of Soc. Sec., No. 20-CV-3909 (PKC), 2022 WL 409701, at *9 (E.D.N.Y. Feb. 10, 2022). Here, Dr. Putcha rendered his opinion without having reviewed the medical opinion of Plaintiff's treating physician, Dr. Kosharskyy, without a personal examination of Plaintiff, and without review of medical records from 2019 that showed a worsening of Plaintiff's condition. Dr. Putcha's opinion was thus stale.

---

[8] Even though Dr. Kosharskyy, Plaintiff's treating doctor, had rendered a medical opinion on May 3, 2019, it was apparently not part of the record that Dr. Putcha reviewed when he rendered his opinion on May 28, 2019. See R. at 108, 110, 335.

See Rodriguez v. Comm'r of Soc. Sec., No. 20-CV-3687 (VSB) (RWL), 2021 WL 4200872, at *18

(S.D.N.Y. Aug. 19, 2021), report and recommendation adopted, 2022 WL 874931 (S.D.N.Y. Mar.

24, 2022) (finding medical opinion stale where it did not account for plaintiff's worsening

condition).

Turning to the consistency factor, the ALJ must also analyze whether the opinion is

consistent with evidence in the record. Prieto, 2021 WL 3475625, at *13. "The more consistent a

medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in

the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2);

accord Acosta Cuevas, 2021 WL 363682, at *10. The ALJ must specifically explain how

"'consistent a medical source/opinion is with the medical evidence as a whole.'" Jackson v.

Kijakazi, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) (quoting Acosta Cuevas, 2021 WL 363682, at

*14). It is not sufficient to cite to "some objective medical evidence in the record" and simply

conclude that an opinion is "consistent with other evidence in the file," thereby rendering it

"persuasive." Acosta Cuevas, 2021 WL 363682, at *14. "Consistency is an all-encompassing

inquiry focused on how well a medical source is supported, or not supported, by the entire record,

not just what a medical source had available to them." Id. at *10.

In addressing the consistency factor, the ALJ explained that Dr. Putcha's opinion was

"consistent with the evidence reviewed at the hearing level," which described "intact strength and

mobility for most of the period at issue." R. at 20. However, the ALJ failed to identify the specific

objective findings to which he referred when concluding that the opinion was consistent with the

evidence in the record. See Jackson, 588 F. Supp. 3d at 586 (although the ALJ provided a summary

of the doctor's findings and concluded that the opinion was "consistent with the findings of other

exams throughout the longitudinal records," the ALJ erred by not "identify[ing] the specific

objective findings to which he referred"). To be sure, the ALJ initially provided a summary of Dr.

Putcha's opinion and findings, when he assessed the opinion as persuasive. <u>See</u> R. at 20. But the ALJ did not identify, as required by the regulations, the specific objective medical findings in the record which he deemed consistent with Dr. Putcha's opinion. <u>Jackson</u>, 588 F. Supp. 3d at 586-87; <u>see also</u> <u>Acosta Cuevas</u>, 2021 WL 363682, at *15.

In sum, a remand is appropriate where, as here, the ALJ failed to adequately address the supportability and consistency factors, as required by the regulations.

>    2.    <u>The ALJ's RFC determination was not supported by substantial evidence.</u>

The ALJ determined that Plaintiff "has the [RFC] to perform light work defined in 20 CFR 416.967(b) except that he can stand and/or walk for a total of four hours out of an eight hour day" and requires a "sit-stand option." R. at 16. Light work includes "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may involve "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b); <u>Rutkowski v. Astrue</u>, 368 F. App'x 226, 230 (2d Cir. 2010). In other words, the ALJ concluded that Plaintiff had the ability to perform work that required him to lift objects weighing up to 20 pounds and frequently lift or carry objects that weigh up to 10 pounds. That determination is not supported by substantial evidence. The record evidence does not support the ALJ's finding that Plaintiff could occasionally lift or carry 20 pounds.

Dr. Kosharskyy opined that Plaintiff could at most lift 10 pounds. R. at 333. In rejecting Dr. Kosharskyy's opinion, the ALJ stated that the 10-pound limitation was "not consistent with the physical examination reports describing only modest limitation in upper extremity strength." <u>Id.</u> at 20. The ALJ does not specify which physical examination reports described Plaintiff as having only modest limitation in his upper body strength. <u>Id.</u> In defense of the ALJ's determination, the Commissioner points to various treatment notes from medical providers that she argues showed, in part, "full motor strength in [Plaintiff's] extremities." Def.'s Br. at 24 (citing to R. at 345, 348, 350,

354, 360-61, 369, 393, 409, 422, 428, 432, 434, 436, 438, 440, 448, 452, 456, 522). These treatment notes reference aspects of Plaintiff's motor strength, including: (1) that Plaintiff's "bilateral muscle strength" was a "5/5" (see R. at 345, 348, 354, 360, 409, 422, 432, 434, 436, 438, 440, 522); (2) that Plaintiff had "no muscle atrophy [or] muscle spasm" (see R. at 350, 369, see also R. at 393, 456); (3) that Plaintiff had "normal" or "strong" motor strength in his upper extremities and a full range of motion (see R. at 428, 448); and (4) that Plaintiff had no paralysis or weakness present in his extremities (see R. at 452).

However, "[m]edical records alone cannot provide substantial evidence for an RFC determination; rather, an ALJ's RFC determination must be supported by a medical *opinion* in the record at that time." Schmidt v. Comm'r of Soc. Sec., No. 20-CV-3594 (KAM), 2022 WL 1540054, at *4 (E.D.N.Y. May 16, 2022) (citation and quotation marks omitted) (emphasis in original); see also Pearson v. Comm'r of Soc. Sec., No. 20-CV-3030 (AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) (reasoning that "the ALJ is a layperson, and as such is not qualified to assess a claimant's RFC on the basis of bare medical findings") (citation omitted). The only medical opinion in the record that indicated that Plaintiff had the ability to lift or carry 20 pounds was Dr. Putcha's. As discussed, see supra pp. 18-20, Dr. Putcha's medical opinion was stale, because he did not review Dr. Kosharkyy's medical opinion or more recent treatment notes indicating that Plaintiff's back condition had worsened. "[W]here a consultative examiner did not review important medical records, the consultative examiner's opinion cannot constitute . . . substantial evidence to support an RFC." Benitez v. Comm'r of Soc. Sec., No. 20-CV-5026 (RWL), 2021 WL 4239244, at *15 (S.D.N.Y. Sept. 17, 2021). There thus is no medical opinion in the record that provides substantial evidence for the ALJ's RFC determination that Plaintiff could lift or carry 20 pounds. And without a medical opinion to support the finding, the ALJ could not use the treatment notes standing alone to make that determination himself.

In short, substantial evidence does not support the ALJ's determination that Plaintiff could lift or carry 20 pounds and thus could perform "light work." Therefore, a remand is also appropriate for the ALJ to make a new RFC determination. See Spain v. Comm'r of Soc. Sec., No. 20-CIV-4837 (NSR) (JCM), 2022 WL 123619, at *2 (S.D.N.Y. Jan. 13, 2022) (remanding where there was "no substantial evidence in the record to support the ALJ's determination" of Plaintiff's RFC) (internal quotation and citation omitted).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and the Commissioner's cross-motion for judgment on the pleadings is **DENIED**. The case is **REMANDED** to the Commissioner for further proceedings consistent with this decision. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 20 and 23.

DATED:      February 24, 2023
            New York, New York

Respectfully submitted,

_____
VALERIE FIGUEREDO
United States Magistrate Judge

Copies to:

All counsel (via ECF)